IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2009

## WALTER HIMES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 06-08498, 07-00800    John Fowlkes, Judge**

---

**No. W2009-00587-CCA-R3-PC  - Filed September 7, 2010**

---

Petitioner, Walter Himes, appeals the post-conviction court's dismissal of his post-conviction petition in which Petitioner alleged that his trial counsel rendered ineffective assistance of counsel, and that his guilty pleas were not voluntarily or knowingly entered.  After a thorough review we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Andre B. Mathis, Memphis, Tennessee, for the appellant, Walter Himes.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Garland Erguden, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Background**

On October 26, 2006, Petitioner was indicted in case no. 06-08492 for aggravated burglary, a Class C felony, and theft of property valued between $1,000 and $10,000, a Class D felony.  On February 8, 2007, Petitioner was indicted in case no. 07-00800 for aggravated robbery, a Class B felony, and aggravated kidnapping, a Class B felony.  Petitioner entered a plea of guilty to aggravated burglary in case no. 06-08492, and the State agreed to enter a nolle prosequi as to the theft charge.  The trial court sentenced Petitioner as a Range I, standard offender, to the agreed upon sentence of three years for his burglary conviction.

Petitioner entered pleas of guilty to aggravated robbery and aggravated kidnapping in case no. 07-00800. The trial court sentenced Defendant to the agreed upon sentences of ten years for each conviction. The trial court ordered Defendant to serve his sentences in case no. 07-00800 concurrently, but consecutively to his sentence in case no. 06-08492, for an effective sentence of thirteen years.

The State submitted the following factual basis in support of Petitioner's conviction in case no. 06-08492 at the guilty plea submission hearing:

> [On] July 15, 2006, officers responded to a domestic service [call] at 6550 Baybrook. Victims Rory [sic] and Deborah Himes advised that their son, [Petitioner], who had not lived in the home for years due to a drug addiction, had broken into their home. They observed their son leaving the house with a female, white, with several items from the property. Officers observed signs of the break-in including broken glass and pry marks on the door. An estimated $1500 in coins were missing from the location.

The State provided the following factual basis in support of Petitioner's convictions in case no. 07-00800:

> [O]n September 13, 2006, Heather Stalling [sic] stated she had gone to her residence in Bartlett located at 3327 Sandstone Cove. The victim noticed that several pieces of electronics were missing from her home, and [Petitioner] was present. She began to question [Petitioner] as the whereabouts of the items. At this point, she stated that he struck her in the face with a closed fist, knocked her to the ground. He then grabbed her by the throat, choking her with one hand while striking her repeatedly again in the facial area. During the course of the assault, the victim advised she did periodically black out, losing consciousness, at which time [Petitioner] bound her hands and feet with duct tape and a cord. He removed the jewelry from her person, including a watch, a ring, and a pair of earrings. She then was placed in a bedroom closet. She was not discovered until the next day by Officer Keyrig (phonetic) of the Bartlett Police Department who had been sent to the home with regard to a missing person's complaint concerning the victim. The closet where the victim was located had been barricaded by [Petitioner] with a large kitchen table top as well as a bed. The victim was found – discovered in the room still partially bound. She was found to have a (indiscernible) swelling and breathing, as well as obvious hemorrhaging of the eyes. She also suffered broken lower teeth as a result of the attack. She also suffered severe bruising and swelling of the face and other parts of her body.

At the guilty plea submission hearing, Petitioner acknowledged that he had entered a plea of guilty in another case prior to the current offenses and understood his rights. The trial court explained to Petitioner the constitutional rights he was waiving by entering pleas of guilty, and Petitioner said that he understood the consequences of his pleas. Petitioner acknowledged that he had reviewed the negotiated plea agreement with his counsel and that he was "freely and voluntarily" entering his pleas of guilty. Before imposing Petitioner's sentence for aggravated kidnapping, the trial court explained to Petitioner that this conviction carried a release eligibility of one hundred percent as a violent offender. At the conclusion of the guilty plea submission hearing, the trial court accepted Petitioner's pleas of guilty and imposed the agreed upon sentences.

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner testified that the victim in case no. 06-08492 was his fiancee, Heather Stone, and the victim in case no. 07-00800 was his father, Roy Himes. Petitioner stated that he pled guilty on May 10, 2007, and "received [a sentence of] ten years at thirty percent for aggravated robbery. Ten years at a hundred percent running concurrent for the aggravated kidnapping and three years at thirty percent consecutive for the aggravated burglary." Petitioner said that he retained the services of trial counsel after initially being represented by the public defender.

A transcript of a court appearance on May 1, 2007, was introduced as an exhibit at the post-conviction hearing. Petitioner indicated in his post-conviction testimony that before the May 1, 2007, court appearance, trial counsel told him that he would have a release eligibility of thirty percent for the aggravated kidnapping sentence. At the May 1, 2007, court appearance, however, the trial court informed Petitioner "that sentence was subject to a hundred percent." Petitioner said that the hearing was continued because Petitioner "was confused as to what to do," and he was hesitant to go to trial with trial counsel because trial counsel had not been aware that there was no parole release for the offense of aggravated kidnapping.

Petitioner said that he had met with trial counsel approximately three times before the May 1, 2007, hearing. Petitioner stated that trial counsel "actually did his job," but trial counsel told Petitioner that "he wasn't educated as to that aspect [the release eligibility] of aggravated kidnapping." Petitioner said that there was "nothing personal" with trial counsel, but Petitioner asked the trial court at the May 1, 2007, hearing if it would appoint new counsel to represent him. The trial court denied his request. Petitioner then agreed to enter pleas of guilty because he did not feel comfortable going to trial with trial counsel.

On cross-examination, Petitioner said that he was a high school graduate and had received his LPN degree. Petitioner acknowledged that at the May 1, 2007, hearing, the trial court asked him if he understood that aggravated kidnapping had a one hundred percent release eligibility. According to the transcript, trial counsel responded, "Actually, I didn't tell him that. I forgot to look that over. I haven't brought that up to him." Petitioner was called as a witness at the May 1, 2007, hearing, and the following colloquy occurred:

[TRIAL COUNSEL]: [Petitioner], since I was hired as your lawyer, do you understand what's going on in your case and the offer from the State in your case?

[PETITIONER]: I'm aware of the offer. . . It was ten years and three years consecutive.

[TRIAL COUNSEL]: Yes, because you were out on bond when you got these new charges.

[PETITIONER]: That's right. I was not aware that it was [a] 100 percent crime. We didn't go over that. . . .

[TRIAL COUNSEL]: Do you understand that now?

[PETITIONER]: Well, I do understand that now.

. . .

[TRIAL COUNSEL]: Do you need some time to think about this before you set your case for trial?

[PETITIONER]: I would prefer a week or so if I could have that. . . .

Petitioner acknowledged that the trial court continued the hearing. Petitioner stated that at the time of the guilty plea submission hearing on May 10, 2007, he understood that the offense of aggravated kidnapping had a one hundred percent release eligibility. Petitioner said, however, that he asked the trial court at the hearing to appoint a public defender to represent him, and the trial court denied his request. Petitioner acknowledged that his request was not reflected in the transcript of the hearing. Petitioner stated:

-4-

[s]o that left me in a situation where I go to trial, I take this charge right here or the judge said that I was facing like, you know, I don't know if it was fifty-two years or something like that . . . with an attorney who is not educated as to the Tennessee law. And . . . I have to take this [settlement offer] because . . . if I can't beat this ten year thing then I'm . . . definitely not going to beat the fifty-two year thing.

Roy Himes, Petitioner's father, testified that he retained trial counsel at Petitioner's request. Mr. Himes stated that he hired trial counsel because trial counsel was confident "that he could get it down to thirty percent." Mr. Himes stated that he would have let the public defender represent Petitioner if he had known that aggravated kidnapping had a one hundred percent release eligibility. Mr. Himes explained that he just wanted Petitioner to go to "jail for a couple of years . . . to try to get him to get rid of the drug problem."

Trial counsel testified that he graduated from the law school at the University of Memphis in 2005, and approximately eighty percent of his practice involved criminal cases. Trial counsel said that Petitioner learned his name from an inmate at the Shelby County Jail. Trial counsel spoke with Petitioner before Petitioner was indicted and visited him at the jail. Trial counsel told Petitioner to call him after he was indicted so that trial counsel could give him an estimated fee. Petitioner called trial counsel approximately two months later. Petitioner said that he was currently represented by the Public Defender's Office, but he wanted to retain trial counsel's services, and the trial court allowed trial counsel to be substituted as counsel.

Trial counsel stated that a settlement offer had already been extended by the time he was retained to represent Petitioner. Trial counsel said that Petitioner always maintained that he did not want to go to trial and "wanted to simply get the best deal that he could." Trial counsel stated that he was able to negotiate a lower sentence than originally offered on one of the offenses. Trial counsel acknowledged that he was not aware that the offense of aggravated kidnapping had a release eligibility of one hundred percent until the May 1, 2007, hearing. Trial counsel said that he realized his error before Petitioner signed the guilty plea acceptance and waiver form. Trial counsel immediately explained the situation to Petitioner. Trial counsel stated that Petitioner was upset and told trial counsel that he wanted to proceed to trial. The trial court continued the guilty plea submission hearing in order to give Petitioner time to discuss the matter further with trial counsel. Trial counsel stated that during the next ten days, Petitioner decided to go ahead and enter into a negotiated plea agreement.

On cross-examination, trial counsel said that Petitioner told him that he wanted another attorney when he found out the aggravated kidnapping sentence must be served at one hundred percent. Trial counsel stated, however, that Petitioner did not request substitute

counsel during the May 1, 2007, hearing. Trial counsel stated that he explained to petitioner the sentences he would receive before the guilty plea submission hearing.

## III. Standard of Review

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-210(f). However, the trial court's application of the law to the facts is reviewed *de novo* ,without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.; State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he or she must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he or she must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his or her counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id*. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In cases involving a guilty plea, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 42, 59, 106 S. Ct. 366, 370 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

**IV. Ineffective Assistance of Counsel**

Petitioner argues that his trial counsel rendered ineffective assistance of counsel because he erroneously advised Petitioner that he would be eligible for release on his sentence for aggravated kidnapping after serving thirty percent of his sentence.

In *Baxter*, our supreme court concluded that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases" as measured by the duties and criteria set forth in *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974) and *United States v. DeCoster*, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). *Baxter*, 523 S.W.2d at 936. Failure by counsel to correctly advise a defendant on a clear point of law may constitute ineffective assistance of counsel. *Beasley*, 491 F.2d at 696. As pertinent here, it was clear at the time Petitioner entered his pleas of guilty that a defendant convicted of aggravated kidnapping was required to serve one hundred percent of the sentence imposed less sentence reduction credits, if any, not to exceed fifteen percent of the sentence. T.C.A. § 40-35-501(I).

Although Petitioner relies on this Court's decision in *Dwane Washington v. State*, No. M2008-01062-CCA-R3-PC, 2009 WL 1676058 (Tenn. Crim. App., at Nashville, June 16, 2009), *no perm. to appeal filed*, the situation presented in that case and the one in the case *sub judice* are clearly distinguishable. In *Dwane Washington*, trial counsel advised the defendant that he was eligible for participation in the boot camp program after sentencing when, in fact, he was not because he was sentenced as a Range II, multiple offender. *Id*., 2009 WL 1676058, at *2. The error was not corrected prior to the guilty plea submission hearing, and the defendant relied on that advice in deciding to enter a plea of guilty. A panel of this Court concluded that trial counsel's advice was directly contrary to the statute, and thus her assistance in this regard was deficient. *Id*. at *8. However, the matter was remanded to the trial court to determine whether this deficiency was prejudicial to the defendant. *See also Howell v. State*, 539 S.W.2d 428, 435 (Tenn. 1978) (granting post-conviction relief when the petitioner's plea of guilty was based on a misunderstanding about his release eligibility date).

In the current case, however, trial counsel discovered his mistake before the negotiated settlement agreement was accepted by Petitioner. The trial court gave Petitioner the opportunity to consider whether to proceed to trial or enter pleas of guilty in light of this new information. The record shows that Petitioner was clearly informed about the release eligibility for an aggravated kidnapping sentence at the guilty plea submission hearing, and Petitioner acknowledged that he understood that he would be required to serve one hundred percent of his ten-year sentence for this offense. Thus, Petitioner has failed to establish that he was prejudiced by trial counsel's initial advice. *See Shannon Pattum v. State*, No. M2002-

02435-CCA-R3-PC, 2003 WL 22927136, at *3 (Tenn. Crim. App., at Nashville, Dec. 11, 2003), *no perm. to appeal filed* (concluding that the petitioner had failed to show prejudice when a letter sent to Petitioner containing erroneous information was "quickly corrected and clearly caused no harm"). Moreover, counsel testified at the post-conviction hearing that Petitioner always intended to enter pleas of guilty and obtain the least sentence possible. Therefore, Petitioner did not show that absent counsel's initial error, Petitioner would have gone to trial. Petitioner is not entitled to relief on this issue.

## V. Entry of Guilty Pleas

When an accused enters a plea of guilty, constitutional considerations mandate that the plea be voluntarily, understandingly and knowingly entered. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713 (1969); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1997). By entering a plea, the defendant waives certain constitutional rights including the privilege against self-incrimination, the right to a trial by jury, and the right to confront witnesses. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. The defendant's waiver of these constitutional rights may not be presumed from a silent record. *Id*. The trial court must ascertain if the defendant fully understands the significant consequences of his or her plea. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1977). The trial court may consider a number of factors including the defendant's relative intelligence, his or her familiarity with criminal proceedings, whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about options, the advice given by counsel and the trial court about the charges against the defendant and the penalty to be imposed, and the defendant's reasons for pleading guilty. *Blakenship*, 858 S.W.2d at 904.

Petitioner contends that he felt compelled to enter his pleas of guilty because he had lost confidence in trial counsel, and the trial court denied his request for substitute counsel. The post-conviction court found trial counsel's testimony credible. Trial counsel testified that Petitioner was upset when he learned that he would have to serve one hundred as opposed to thirty percent of his aggravated kidnapping sentence. Petitioner expressed impatience with trial counsel and mentioned that he wanted different counsel to represent him. Trial counsel stated, however, that Petitioner did not request the trial court for substitute counsel at the May 1, 2007, hearing immediately following trial counsel's and Petitioner's discussion concerning release eligibility dates. Instead, Petitioner was extended the opportunity to decide whether to proceed to trial or enter pleas of guilty during a ten day continuance. Again we note that trial counsel stated that Petitioner always intended to enter pleas of guilty, and his goal was to secure the least sentence possible. Trial counsel explained that the offenses involved Petitioner's parents and his fiancee so that identity was not an issue. At the guilty plea submission hearing, the trial court again explained to Petitioner that he would have to serve one hundred percent of his sentence for aggravated

kidnapping, and Petitioner acknowledged that he was knowingly and voluntarily entering his pleas of guilty.  Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that Petitioner knowingly and voluntarily enter his pleas of guilty.  Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE